937 P.2d 933

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Thomas E. CAPRIO, Defendant–Appellant.**

**No. 17455.**

Intermediate Court of Appeals of Hawai'i.

April 25, 1997.

8. *See supra* note 7.

Peter Van Name Esser, on the briefs, Honolulu, for defendant-appellant.

Loretta A. Matsunaga, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE, and KIRIMITSU, JJ.

WATANABE, Judge.

Defendant–Appellant Thomas E. Caprio (Defendant) appeals from the Judgment entered by the First Circuit Court on September 7, 1993 (Judgment), convicting and sentencing him for five counts of sexual assault in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 707–732(1)(e) (1993), kidnapping, in violation of HRS § 707–720(1)(d) (1993), and compensation by an adult of juveniles for crimes (compensation offense), in violation of HRS §§ 709–904.5(1) (1993) and 709–904.5(2)(c) (1993).

Defendant contends that (1) the trial court committed plain error by failing to give the jury an instruction that it could convict him of the lesser included offense (LIO) of sexual assault in the fourth degree (LIO instruction); (2) the trial court improperly convicted Defendant of the compensation offense; (3) his kidnapping conviction was barred by HRS § 701–109 (1993) and the double jeopardy clauses of the federal and state constitutions because it was based on the same conduct used to establish the "strong compulsion" requirement for the five counts of sexual assault in the third degree; (4) if there was evidence of separate conduct to support his convictions for both the kidnapping and sexual assault offenses, the trial court should have instructed the jury that in order to convict him of both offenses, it had to find that the act of restraint for kidnapping purposes was separate or different from the act or acts of strong compulsion which it relied on as proof for the sexual assault charges (separate conduct instruction); (5) the deputy prosecutor committed misconduct during closing arguments, thus prejudicing Defendant's right to a fair trial; and (6) his trial counsel provided ineffective counsel by failing to properly raise the foregoing errors.

We agree that the trial court should have given the LIO instruction to the jury and that Defendant was wrongly convicted of the compensation offense. We disagree that Defendant's convictions for both kidnapping and sexual assault in the third degree were barred by HRS § 701–109(1)(e) and the federal and state guarantees against double jeopardy. However, because our review of the evidence indicates that Defendant's kidnapping of the complainant was necessarily and incidentally committed while Defendant was sexually assaulting the complainant, we conclude that his conviction of both offenses was barred by HRS § 701–109(1)(a) and (4). We also conclude that the deputy prosecutor's closing argument did not prejudice Defendant's right to a fair trial.

Accordingly, we reverse that part of the Judgment that convicted Defendant of the compensation offense, vacate the Judgment as to the remaining convictions, and remand this case to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

When the complainant in this case (Complainant) was seventeen years old, she married a serviceman and thereafter moved with him to Hawai'i. After arriving here, Complainant attended and graduated from Moanalua High School, and on or about October 1, 1992, while she was still seventeen years old, she was hired by Defendant, the manager of Consolidated Resorts (Consolidated), to work as a hostess for the company. Her job at

Consolidated, a company which sold time-shares in condominium units, was to "appear pleasant and smile a lot and serve coffee and donuts to the customers."

Complainant testified at trial that on October 18, 1992, after she had been working at Consolidated for about fifteen days, Defendant approached her and said, "[C]an I speak with you a moment." When Complainant went into Defendant's office, Defendant closed the door. Claiming that he had a "kink in [his] neck from all [the] stuff of the office," Defendant asked Complainant if she would "massage it for [him]."

Complying with Defendant's request, Complainant stood behind Defendant and massaged his neck. After a while, however, Defendant grabbed Complainant's arm and "pull[ed] [her] around in front of him and [she was] standing between his legs." Complainant began to feel "nervous because it didn't feel right." Complainant, who was wearing silk "culotte shorts" that day, stated that while she was massaging Defendant's neck, Defendant was "feeling [her] legs" and "then he went up underneath [her] shorts . . . . and held [her] butt" and "closed his legs so [her] knees were together." Complainant claimed that "[she] couldn't move because [her] knees . . . were locked."

According to Complainant, she "stopped massaging" because she "was scared" and asked Defendant to "stop" and "let [her] go back to work." Defendant responded that she "didn't need to go to work" and "needed to stay there with him." Complainant asked Defendant about five times to stop, but Defendant "just said relax. It's not like we're having sex."

Thereafter, Complainant claimed, Defendant "pulled [her] underwear over" so that her vagina was exposed and he rubbed her vagina back and forth with his hands for a "[c]ouple of minutes." Complainant asked Defendant to leave, but "[Defendant] had [her] legs pinned together," and "[she] couldn't move." Defendant also told her she "couldn't leave." Defendant then "leaned over to his left and . . . locked the door" to his office. Although Complainant asked Defendant three more times to stop, Defendant continued fondling Complainant. He "lifted [Complainant's] shirt up and [her] bra down," "put his face in [her] chest" to smell her, touched her breast with his hand, and finally "sucked" her breast with his mouth. Complainant also claimed that while Defendant was sucking her breast, Defendant "grabbed [her] hands" and put them on that part of his pants which covered "his penis," which "was hard."

Afterward, Defendant pulled Complainant's bra back up, pulled down [her] shirt, and told Complainant, "I know you like working here[.]" Defendant also said to Complainant, "[I]f you come in, in my office every week, then I will take you out . . . . buy [you] new clothes for work and . . . take care of [you]." Defendant also stated that he was going to give Complainant a raise and that if Complainant "wanted to keep [her job, she] will keep this between us." Defendant then opened his legs and released Complainant. As Complainant reached for the door, Defendant "stuck something in [her] hand," later discovered by Complainant to be two twenty-dollar bills (forty dollars), and said, "[H]ave a nice day."

Complainant stated that she left Defendant's office crying and immediately went to the restroom. Another hostess, Yvonne Cheeseman (Yvonne), testified at trial that she witnessed Complainant hurriedly leave Defendant's office in tears and proceed directly to the restroom. Yvonne followed Complainant into the restroom, inquired what happened, and was told by a "[v]ery upset and crying" Complainant that Defendant "had . . . made passes at her and felt her up and stuff like that. . . . He asked for a massage. Then other things happened." Complainant also threw the forty dollars Defendant had given her "on the counter." After informing Yvonne what had happened, Complainant "said she was going home." Yvonne responded, "[F]ine, just go. I will cover for you." Yvonne then went to get Complainant's bag, and Complainant caught the elevator downstairs and walked outside the building, where she waited for about thirty-five minutes until her husband arrived. After Complainant told her husband what had transpired, he called the police. Defendant was arrested shortly thereafter.

Defendant's version of the events that took place on October 18, 1992 was completely different. According to Defendant, he hired Complainant on or about October 1, 1992. All he asked of her was that she be dependable, dress conservatively, and have a nice smile and personality. When Complainant began working, however, Defendant had problems with her attire. One day, for example, Complainant came to work in such a "tight skirt" that people could see "the whole design of her bikini panties .... right through the white dress." Defendant claims that he immediately asked to speak to Complainant, "sat down with her[,]" and told her she had "to change." Defendant also "got a hold of salesperson Karen Wong" (Karen), gave Karen some money and told her to take Complainant shopping to buy a "muumuu [mu'umu'u] dress." However, about an hour later, Karen came up to Defendant and informed him that Complainant "doesn't want to wear no muumuu [mu'umu'u]." As a result, Defendant summoned Complainant to his office, lectured her about her attire, and told her he did not want her in the sales office until she had changed. Complainant, "cry[ing] like it was Niagara Falls[,]" then called her husband to bring her a change of clothes.

Defendant testified that on the day of the alleged incident, he reprimanded Complainant five times. In the morning, he spoke to her about putting on makeup in the sales room because it was "tacky." He also scolded her for sitting in the client chairs and not looking busy, making an airline reservation for the wrong day, running her fingers over his shoulder, and purposefully bumping into him several times. Defendant finally decided to speak with Complainant about her performance and brought her to his office.

Defendant testified that while he was sitting in his chair, Complainant got on his back and started massaging his neck. He asked her to step in front of him so he could talk to her. Closing the door to his office so that the other staff would not hear him reprimand Complainant, Defendant then counseled Complainant about her conduct earlier that day. He also brought up the issue of Complainant's attire but changed the subject when he saw that Complainant "had these watery eyes." Defendant also explained to Complainant that the other employees were "putting the pressure on [him] to let [her] go."

Defendant testified that while he was censuring Complainant, Complainant suddenly said, "I need a Sunday dress. I am going." Thinking that a Sunday dress was "something conservative[,]" Defendant approved of Complainant's suggestion and gave her forty dollars to buy the dress. According to Defendant, Complainant then said to him, "I am home alone every night, and I am bored. Why don't you take me shopping?" Defendant made no promises about going shopping and reminded her to improve her performance. Defendant also stated that when Complainant left his office, she was not crying.

On October 21, 1992, Defendant was indicted and charged with committing five counts of sexual assault, one count of kidnapping, and one count of the compensation offense. As to the sexual assault counts, the indictment alleged that Defendant knowingly, by strong compulsion, had the following sexual contacts with Complainant:

Count 1—touched her buttocks with his hand

Count 2—touched her vagina with his hand

Count 3—touched her breast with his hand

Count 4—touched her breast with his mouth

Count 5—placed Complainant's hand on his penis.

## DISCUSSION

### A. *Whether the LIO Instruction Was Required*

HRS § 701-109 (1993) provides, in relevant part, as follows:

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to

establish the commission of the offense charged[.]

* * *

(5) The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

Defendant contends that his trial counsel was ineffective for failing to request, and the circuit court committed plain error for failing to submit, a jury instruction on the LIO of sexual assault in the fourth degree. We agree.

The Hawai'i Supreme Court has instructed that a trial court is obligated, even absent a request by either party, to bring all LIO instructions supported by the evidence to the attention of the parties and then give each such instruction to the jury unless (1) the prosecution does not request that the instructions be given; and (2) the defendant specifically objects to the instructions for tactical reasons. *State v. Kupau,* 76 Hawai'i 387, 395, 879 P.2d 492, 500 (1994).

█ As a threshold issue, therefore, we must determine (1) whether sexual assault in the fourth degree is an LIO of sexual assault in the third degree under HRS § 707–732(1)(e); and then (2) whether there was a rational basis in the evidence to acquit Defendant of sexual assault in the third degree and convict him of sexual assault in the fourth degree.

Defendant was charged with committing sexual assault in the third degree in violation of HRS § 707–732(1)(e), which provides, in relevant part: "A person commits the offense of sexual assault in the third degree if: ... [t]he person knowingly, *by strong compulsion,* has sexual contact with another person or causes another person to have sexual contact with the actor[.]" (Emphasis added.) "Strong compulsion" is defined in HRS § 707–700 (1993) as

the use of or attempt to use one or more of the following to overcome a person:

(1) A threat, express or implied, that places a person in fear of bodily injury to the individual or another per-

son, or in fear that the person or another person will be kidnapped;

(2) A dangerous instrument; or

(3) Physical force.

HRS § 707–733(1)(a) (1993), in comparison, states: "A person commits the offense of sexual assault in the fourth degree if: ... [t]he person knowingly subjects another person to sexual contact *by compulsion* or causes another person to have sexual contact with the actor *by compulsion* [.]" (Emphases added.) "Compulsion" is defined in HRS § 707–700 as the "absence of consent, or a threat, express or implied, that places a person in fear of public humiliation, property damage, or financial loss."

Since the only difference in the required proof for both offenses is that HRS § 707–732(1)(e) requires "strong compulsion" while HRS § 707–733(1)(a) demands only "compulsion," we conclude, based on HRS § 701–109(4)(a), that fourth degree sexual assault under HRS § 707–733(1)(a) is an LIO of third degree sexual assault under HRS § 707–732(1)(e).

█ We turn then to an examination of the record to determine whether "there [was] a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." HRS § 701–109(5). We conclude that there was.

We note, first of all, that the trial below essentially boiled down to a credibility contest since Defendant flatly denied any wrongdoing against Complainant. Based on the evidence proffered by the defense as to what happened on the day in question, there was clearly a rational basis in the evidence for a verdict acquitting Defendant of the five counts of sexual assault in the third degree.

There was also a rational basis in the evidence for a verdict convicting Defendant of the LIO of sexual assault in the fourth degree. Complainant's testimony provided support for a finding that Defendant knowingly subjected Complainant to sexual contact. There was also evidence that Defendant had threatened Complainant with financial loss and that Complainant had

not consented to Defendant's acts of sexual contact. Complainant testified that Defendant told her that if she wanted to keep her job, she should keep what had transpired "between us." Complainant also testified that (1) when Defendant touched her buttocks, "I just said, stop[;]" (2) when Defendant touched her vagina, "I asked him to leave.... He said I couldn't leave[;]" (3) when he touched her breast with his hand and then with his mouth, "I was just standing, staring at the wall.... I didn't know what to do. I had told him to stop." Moreover, Complainant testified that she had told Defendant about eight times during the course of the incident to stop. Based on the foregoing evidence, the jury could have rationally found that Defendant was guilty of the LIOs of sexual assault in the fourth degree.

It was thus incumbent upon the circuit court to bring the fourth degree sexual assault LIO instructions to the attention of the parties. The court's failure to do so constituted plain error. *State v. Kupau*, 76 Hawai'i at 396, 879 P.2d at 501.

### B. *Whether Defendant Was Properly Convicted of the Compensation Offense*

■ Pursuant to HRS § 709–904.5 (1993),

(1) A person other than a juvenile commits the offense of compensation of a juvenile for a crime if the person intentionally or knowingly compensates, offers to compensate, or agrees *to compensate any juvenile for the commission of any criminal offense.*

\* \* \*

(4) For the purposes of this section, the following terms have the following meanings:

"Compensate" means to confer any benefit or pecuniary benefit.

"Juvenile" means any person under eighteen years of age.

(Emphasis added.)

The grand jury, in Count 7 of the indictment, charged Defendant as follows:

On or about the 18th day of October, 1992, in the City and County of Honolulu, State of Hawaii [Hawai'i], [Defendant], an adult, did intentionally or knowingly compensate, offer to compensate, or agree to compensate a juvenile for the commission of a criminal offense, to wit, Sexual Assault in the Third Degree, which is a Class C felony, thereby committing the offense of Compensation by an Adult of Juveniles for Crimes, a Class B felony, in violation of Sections 709–904.5(1) and 709–904.5(2)(c) of the Hawaii [Hawai'i] Revised Statutes.

Defendant contends that because there was absolutely no evidence adduced at trial that he had compensated Complainant, a juvenile, to commit the charged offenses of sexual assault in the third degree, his conviction for the compensation offense was erroneous as a matter of law. Defendant argues that under HRS § 709–904.5, he could not be convicted of the compensation offense for compensating Complainant for *his* commission of sexual assault against her. We agree.

The "interpretation of a statute is a question of law which this court reviews *de novo*. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Crosby v. State Dep't of Budget & Fin.*, 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994) (citation and internal quotation marks omitted).

In this case, the literal language of HRS § 709–904.5 clearly provides that the compensation offense is committed only when an adult intentionally or knowingly compensates, offers to compensate, or agrees to compensate any juvenile to commit a criminal offense.

The legislative commentary on HRS § 709–904.5, which, pursuant to HRS § 701–105 (1993), "may be used as an aid in understanding the provisions of [the Hawai'i Penal Code]," states:

Act 314, Session Laws 1986, provided for enhanced sentences for an adult offering to pay a juvenile to commit a crime. This offense is aimed at deterring adults from inducing juveniles to engage in criminal activity, a practice frequently used because juveniles are generally given lesser sen-

tences than those for adults for the same crime.

Additionally, the conference committee of the 1986 legislature, which recommended the enactment of a new section to the Penal Code, now codified as HRS § 709–904.5, explained the purpose of the new section as follows:

> A new section entitled "Compensation by an adult of minors for crimes" provides for enhanced sentences where an adult offers to pay a juvenile to commit a crime. Juveniles are frequently used by adults in the commission of crimes because juveniles are generally given lesser punishment for the same crime committed by an adult. The new offense provides that the penalty assessed for the offender shall be more severe than that assessed for the commission of the crime in order to deter adults from inducing juveniles to participate in criminal activity.

Conf. Com. Rep. No. 51–86 on H.B. No. 100, in 1986 Senate Journal, at 749.

■ Based on the literal language of HRS § 709–904.5, as well as its legislative history, it is clear that the statute is violated when an adult pays a juvenile to commit a crime. No violation occurs, however, when a juvenile is compensated for a crime committed by the adult.

The State argues on appeal that the purpose of HRS § 709–904.5 was to deter adults from inducing juveniles to participate in criminal activity and that Defendant, by giving Complainant forty dollars, "sought to draw her into criminal activity, i.e., prostitution."

We find no merit to the State's argument. First, the indictment charged Defendant with compensating Complainant to commit sexual assault in the third degree, not with inducing prostitution. Second, prostitution is a petty misdemeanor, HRS § 712–1200(3) (1993); therefore, if there were merit to the State's argument, HRS § 709–904.5 would elevate the offense against Defendant to a misdemeanor, not the class B felony Defendant was convicted of.

In light of the foregoing discussion, we conclude that the circuit court erred in not dismissing the compensation offense charge against Defendant. For this reason, Defendant's conviction for the compensation offense must be reversed.

C. *Whether Defendant's Convictions for Both Kidnapping and Sexual Assault in the Third Degree Were Barred by the Guarantee Against Double Jeopardy or HRS § 709–109(1)(e)*

During closing arguments, the State urged the jury to find "strong compulsion" based partly on Defendant's act of holding Complainant with his legs.[1] The State also argued to the jury that the same evidence supported the charge of kidnapping.[2]

---

1. The State of Hawai'i (the State) argued as follows:

> Well, what is strong compulsion? You will see, when you look at the jury instructions, that there's [a] definition of strong compulsion. And in that definition, it will tell you that it is physical force, physical force.
>
> And then after you look at the next definition, there's a definition of what physical force is. And when you see that, you will see that it says restraint, confinement, or any bodily impact.
>
> Now, you may have your own idea of what you think strong compulsion should be; but the law is going to give you definitions that you have to use to apply. And the State submits that if you look at the evidence, when you look at all the evidence, you will see that [Complainant] is telling the truth. And when you believe [Complainant], you will see that she testified that [Defendant] held her with his legs before he touched her buttocks and then touched her vagina and then went over to lock the door and touched the rest of her, touched her breasts with his hands and his mouth and had her touch his penis. That, ladies and gentlemen, satisfies the definition of strong compulsion. It is restraint, confinement, and a bodily impact. His knees are impacting on her legs.

2. The State's arguments in this regard were as follows:

> Kidnapping has three things the State needs to prove. Once again, you may have your own definition of kidnapping in your mind. Somebody has to take you down and move somebody from one place to another and all those sort of images that get conjured up. That's not what the law says, and you guys are obligated to follow the law that the Defendant restrained [Complainant]. Remember again he held her legs. He pinned them with his legs so that she couldn't move. Is that restraint? You bet.

Defendant maintains that because the same conduct was used to establish both "restraint," for kidnapping[3] purposes, and "strong compulsion," for sexual assault purposes, he was convicted twice for the same conduct, in violation of his guarantee against double jeopardy and HRS § 701–109(1)(e). We disagree.

### 1. *The Double Jeopardy Issue.*

#### a. *General Background.*

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" Article I, section 10 of the Hawai'i Constitution similarly provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy[.]"

The underlying idea of the protection from double jeopardy is that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957).

The United States Supreme Court has stated that the double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

*Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

The double jeopardy clause safeguards three distinct interests of a criminal defendant. It protects against (1) a second prosecution for the *same offense* after acquittal, (2) a second prosecution for the *same offense* after conviction, and (3) multiple punishments for the *same offense,* even in a single prosecution. *State v. Lessary,* 75 Haw. 446, 454, 865 P.2d 150, 154 (1994) (relying on *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)) (emphases added). (Hereafter, the first two safeguards will collectively be referred to as the protection against successive prosecutions, and the third safeguard will be referred to as the protection against multiple punishments.)

What constitutes the "same offense" for double jeopardy purposes, however, is not easily determined for, as Justice Rehnquist once observed, the phrase is "deceptively simple in appearance but virtually kaleidoscopic in application." *Whalen v. United*

---

That he did so intentionally or knowingly, that he knew what he was doing when he held his legs.

If you look at the evidence, it becomes clear. And also that he did so to subject her to a sexual offense. I submit to you, ladies and gentlemen, a kidnapping in this case occurred between the first two sexual assaults from the last three. You'll remember that [Complainant] said [Defendant] held my legs, touched my buttocks and touched my vagina while she protested the whole time telling him no, please stop, I'm married.

Then he still held her legs, and he reached over and he pushed the button in to keep somebody from coming into that room. When you have that, you have Kidnapping[.]

**3.** Defendant–Appellant Thomas E. Caprio (Defendant) was charged with kidnapping, in violation of Hawai'i Revised Statutes (HRS) § 707–

720(1)(d) (1993), which provides, in relevant part, as follows:

(1) A person commits the offense of kidnapping if the person intentionally or knowingly *restrains* another person with intent to:

\* \* \*

(d) [i]nflict bodily injury upon that person or *subject that person to a sexual offense* [.]

(Emphases added.)

The word "restrain" is defined in HRS § 707–700 (1993) as follows:

"Restrain" means to restrict a person's movement in such a manner as to interfere substantially with the person's liberty:

(1) By means of force, threat, or deception; or

(2) If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of the person.

*States,* 445 U.S. 684, 700, 100 S.Ct. 1432, 1442, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting). Generally, courts have applied one of three tests in analyzing whether offenses are the "same" for double jeopardy purposes. *See Lessary,* 75 Haw. at 454–59, 865 P.2d at 154–56.

Under the "same elements" or *"Blockburger"* test adopted by the United States Supreme Court for evaluating violations of the federal double jeopardy clause,

> [t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger v. United States,*[4] 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

Under this test, the proper focus is on the statutory elements of the two offenses. If a statute defining one of the offenses requires proof of a fact which the other statute does not, the offenses are considered to be distinct and a defendant's conviction or acquittal of either offense "does not exempt the defendant from prosecution and punishment under the other [statute]." *Id.* at 304, 52 S.Ct. at 182.

Under the "same conduct" or *"Grady"* test first articulated by the United States Supreme Court in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), a two-step process is used to determine whether a subsequent prosecution is barred by the Double Jeopardy Clause:

> [A] court must first apply the traditional *Blockburger* test. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred.

\* \* \*

[Second], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.

*Id.* at 516, 521, 110 S.Ct. at 2090, 2093 (citation and footnotes omitted).

Under the "same episode" or "same transaction" test advocated by Justice Brennan in his concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 453–54, 90 S.Ct. 1189, 1199–1200, 25 L.Ed.2d 469 (1970),

> all offenses "that grow out of a single criminal act, occurrence, episode, or transaction" would be considered the "same offense" for purposes of determining whether the guarantee against being "subject for the same offense to be twice put in jeopardy" bars a second prosecution. Under that test, once an individual has been prosecuted for one offense, that individual cannot be later prosecuted for any other offense committed during the same episode, even if the offenses were committed by distinct acts. For example, if an individual kidnapped, then raped, and finally murdered another person, and was initially prosecuted for the kidnapping offense alone, the "same episode" test would preclude any subsequent prosecution for the rape or murder.

*State v. Lessary,* 75 Haw. at 458, 865 P.2d at 155–56 (citations omitted).

b. *The Hawai'i Law on Double Jeopardy.*

In cases implicating the Hawai'i double jeopardy safeguard against successive prosecutions, the Hawai'i Supreme Court claims to

---

**4.** In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the defendant was prosecuted for selling narcotics to the same purchaser without a written prescription and in a container other than the original stamped package. The United States Supreme Court held that although both violations arose from a single narcotics sale, the offenses were distinct because "[e]ach of the offenses created requires proof of a different element .... each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

have adopted the "same conduct" test[5] for determining whether a subsequent prosecution is barred by a former prosecution. *State v. Lessary*, 75 Haw. at 459, 865 P.2d at 156.

This case, however, involves the double jeopardy safeguard against multiple punishments for the same offense. Since the supreme court did not indicate in *Lessary* that the same conduct test was to be applied to multiple punishment situations, we believe that our analysis of whether Defendant's convictions for kidnapping and sexual assault in the third degree violated the guarantee against double jeopardy is governed by *State v. Mendonca*, 68 Haw. 280, 711 P.2d 731 (1985), a multiple punishment case.

In *Mendonca*, the supreme court concluded that the defendant was not improperly punished for the same offense, in violation of the double jeopardy clause, when he was convicted, in one trial, for the offenses of attempted first degree robbery and attempted murder. In a footnote, the supreme court recognized that under the federal constitution, the *Blockburger* "same elements" test applied "to determine whether there are two offenses or only one[.]" *Id.* at 285 n. 2, 711 P.2d at 735 n. 2. The court noted additionally that the federal test is "less rigorous than that imposed by Hawaii [Hawai'i] law." *Id.* (citing *State v. Pia*, 55 Haw. 14, 18, 514 P.2d 580, 584 (1973)). According to *Pia*, the more rigorous Hawai'i test for determining whether two offenses are the same for state double jeopardy purposes is whether each offense "requires proof of a fact not required by the former offense[6] and the law defining each of the offenses is intended to prevent a substantially different harm or evil." *Pia*, 55 Haw. at 18, 514 P.2d at 584 (internal quotation marks omitted). The Hawai'i test thus

---

**5.** In *State v. Lessary*, 75 Haw. 446, 865 P.2d 150 (1994), the supreme court stated that it was adopting the " 'same conduct' test as set forth in *Grady* " for determining whether offenses were the same in a "multiple prosecution" situation. *Id.* at 459, 865 P.2d at 156.

In actually applying the "same conduct" test to the facts in *Lessary*, however, the supreme court appears to have altered the *Grady* test. Under *Grady*, a subsequent prosecution of a criminal defendant is barred if "the government, *to establish an essential element of an offense charged in that prosecution*, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 457–58, 865 P.2d at 155 (emphasis added). As defined in HRS § 702–205 (1993),

[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) Are specified by the definition of the offense, and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

Pursuant to the *Grady* test, therefore, the State would be barred in a subsequent prosecution from relying on any conduct which it had used in the first prosecution to establish either the conduct, attendant circumstances, or results elements of an offense charged.

In contrast, the test applied by the supreme court in *Lessary* appears to focus solely on whether the State is relying, in a subsequent prosecution, on the "same acts" it relied on to prove the "conduct element" of an offense for which the defendant has already been prosecuted:

Prosecutions are for the same conduct if any act of the defendant is alleged to constitute all or part of the *conduct elements* of the offenses charged in the respective prosecutions.

*Id.* at 462, 865 P.2d at 157 (emphasis added).

**6.** In *State v. Pia*, 55 Haw. 14, 514 P.2d 580 (1973), the supreme court said:

When there is a subsequent prosecution at a separate trial for the same conduct under a different statutory provision, the test for determining whether a conviction or acquittal in a former prosecution constitutes a bar is as stated by this court in *State v. Ahuna*, 52 Haw. [321], 326, 474 P.2d [704], 707 [ (1970) ]:

[A] former prosecution, although it has been a violation of a different statutory provision, will bar a subsequent prosecution if the subsequent prosecution is for an offense based on the same conduct unless the offense "requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil." [Section 111 of the now Hawaii [Hawai'i] Penal Code].

The federal constitutional standard is less rigorous. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not").

*Id.* at 18–19, 514 P.2d at 584 (brackets in original and brackets added).

The supreme court, in embracing the *Ahuna* standard for determining what constitutes the "same offense" for double jeopardy purposes, thus applied a standard developed in a multiple prosecution setting.

"adopts the *Blockburger* rule and adds thereto a requirement that the law defining each of the offenses is intended to prevent a substantially different harm or evil." *State v. Santiago*, 8 Haw.App. 535, 541, 813 P.2d 335, 338 (1991) (citation and quotation marks omitted).

c. *Whether the Offenses of Kidnapping and Sexual Assault in the Third Degree are the "Same Offense" for Double Jeopardy Purposes.*

■ Applying the *Blockburger* "same elements" test, it is clearly evident that kidnapping under HRS § 707–720(d) and sexual assault in the third degree under HRS § 707–732(1)(e) are not the "same offense" for federal double jeopardy purposes. The kidnapping offense, for example, requires proof of (1) intentional or knowing restraint of another person with (2) intent to (a) inflict bodily injury upon that person or (b) subject that person to a sexual offense. The sexual assault offense, on the other hand, requires proof that the defendant (1) knowingly, (2) by strong compulsion, (3) had sexual contact with another person or caused another person to have sexual contact with the defendant. Since both offenses require proof of a fact which the other does not, the offenses are different and Defendant's federal double jeopardy guarantee is not violated by his conviction and punishment for both offenses.

The two offenses also fail to meet the second prong of the Hawai'i *Mendonca* standard so as to constitute the "same offense" for state double jeopardy purposes. The supreme court has stated that "[t]he main thrust of the kidnapping statute is to prohibit the intentional restraint of another's freedom of movement." *State v. Hoopii*, 68 Haw. 246, 251, 710 P.2d 1193, 1196 (1985). In contrast, the sexual assault in the third degree statute is primarily concerned with preventing another from being forced to engage in acts of sexual contact. *Id.*, 710 P.2d at 1196–97 ("rape and sodomy statutes are primarily concerned with preventing another from being forced to engage in sexual acts"). The two offenses are therefore intended to prevent a substantially different harm or evil, and Defendant's conviction and punishment for both offenses are not barred by the state double jeopardy clause.

2. *The HRS § 701–109(1)(e) Issue.*

Defendant also maintains that his convictions for both offenses are barred by HRS § 701–109(1)(e). Unlike the double jeopardy clause, which protects a defendant from successive prosecutions, after acquittal or conviction, for the "same offense," and from multiple punishments for the "same offense," HRS § 701–109 is a multiple offense limitation that protects a defendant from being convicted for certain combinations of offenses arising from the same conduct. 1 P. Robinson, *Criminal Law Defenses* § 68(a) at 328–29 (1984). The statute provides, in part, as follows:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

\* \* \*

(e) *The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.*

(Emphasis added.) According to the Commentary on the foregoing statutory provision,

[s]ubsection (1) permits the State's case against the defendant to go to the jury on as many offenses as to which the State can meet its burden of making out a prima facie case. *The jury may convict the defendant of as many offenses as the defendant has committed unless: ... the offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted (unless the law provides that specific periods of conduct constitute separate offenses).* This subsection reflects a policy to limit the possibility of multiple convictions and extended sentences when the defendant has basically engaged in only one course of criminal

conduct directed at one criminal goal, or when it would otherwise be unjust to convict the defendant for more than one offense.

(Emphasis added.)

The wording of HRS § 701–109(1)(e) is identical to *Model Penal Code* § 1.07(1)(e). The Comment to section 1.07 of the *Model Penal Code* explains the reason for the foregoing provision, in relevant part, as follows:

(e) *Continuing Course of Conduct.* Subsection (1)(e) deals with a continuing course of conduct prohibited by a single statute. *It provides that only one conviction is proper based upon a single uninterrupted course of such behavior, unless the statute prescribes that specific periods constitute separate offenses.* For example, a person violates an unlawful cohabitation statute only once, no matter how long his unlawful cohabiting continues, where the conduct was not interrupted by the issuance of process or otherwise. This is consistent with the Supreme Court's decision in *Brown v. Ohio* [, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) ]. The Court there rejected the state's contention that defendant's convictions for both joyriding and auto theft were proper because "the charges against him focused on different parts of his 9–day joyride." [7] The Court stated: "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." The Court noted, however, that the case would be different "if the Ohio Legislature had provided that joyriding is a separate offense for each day in which a motor vehicle is operated without the owner's consent [or] if the Ohio courts had construed the joyriding statute to have that effect."

*Model Penal Code* § 1.07 Comments 1, 2(e) (1985) (emphasis and footnote added; footnotes omitted).

The foregoing Commentary and Comments indicate that HRS § 701–109(1)(e) was intended to prohibit the State from dividing a crime, defined by statute as a continuing offense, into separate temporal or spatial units, and then charging a defendant with committing several counts of the same statutory offense, each count based on a separate temporal or spatial unit of the continuing offense. That did not occur here.

 We note, first of all, that Defendant was charged with only one kidnapping offense. Consequently, even if the form of kidnapping Defendant was charged with constitutes a continuing offense, HRS § 701–109(1)(e) would not be implicated. Furthermore, although Defendant was charged with multiple sexual assault in the third degree counts arising out of the same episode, the Hawai'i Supreme Court recently held that sexual assault in the third degree, in violation of HRS § 707–732(1)(b),[8] "[is] not—and can-

---

7. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), Brown, the defendant, stole a 1965 Chevrolet from a parking lot on November 29, 1973. Nine days later, on December 8, 1973, he was caught driving the car and thereafter, was charged with "joyriding," i.e., taking, operating, or keeping the car without the operator's consent. Brown pleaded guilty to the charge and was sentenced to thirty days in jail and a $100 fine. Upon his release from jail, Brown was indicted on two counts stemming from the same auto theft incident. The first count charged him with theft of the same car on or about November 29, 1973, and the second count charged him with joyriding on the same date. Brown objected to both counts of the indictment on the basis of former jeopardy.

The Ohio Court of Appeals held that under Ohio law, joyriding was a lesser included offense of auto theft and, therefore, the two offenses were "the same statutory offense" for double jeopardy purposes. Nonetheless, the court concluded that Brown could be convicted of both offenses because the charges against him focused on different parts of his nine-day joyride. Disagreeing, the United States Supreme Court held: "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.... [T]he specification of different dates in the two charges on which Brown was convicted cannot alter the fact that he was placed twice in jeopardy for the same offense in violation of the Fifth and Fourteenth Amendments." *Id.* at 169–70, 97 S.Ct. at 2227.

8. HRS § 707–732(1)(b) (1993) provides:
(1) A person commits the offense of sexual assault in the third degree if:
* * *
(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

not be—[a] 'continuing [offense]' and that each distinct act in violation of [this statute] constitutes a separate offense under the [Hawai'i Penal Code]." *State v. Arceo*, 84 Hawai'i 1, 21, 928 P.2d 843, 863 (1996) (footnote added). If this were not so, the supreme court noted,

> a person who has committed one sexual assault upon a victim [could] commit with impunity many other such acts during the same encounter, and the commission of one act would insulate the perpetrator from further criminal liability for any additional acts of the same character perpetrated on the same [victim] in subsequent encounters.... [S]uch a result defies rationality, and, as such, is an absurdity that we presume that the legislature did not intend.

*Id.* at 22, 928 P.2d at 864 (quotation marks, ellipsis, and citations omitted). The supreme court also observed that "appellate courts of this state have consistently recognized that each act constituting a sexual assault is punishable as a separate and distinct offense." *Id.* at 20, 928 P.2d at 862.

Based on the supreme court's reasoning in *Arceo*, we similarly conclude that sexual assault in the third degree committed in violation of HRS § 707–732(1)(e) is not a continuous offense and, therefore, Defendant's convictions of five counts of said offense, each of which was based on a separate sexual contact, did not violate the statute.

### D. *HRS § 701–109(1)(a) and (4)*

In *State v. Correa*, 5 Haw.App. 644, 706 P.2d 1321 (1985), this court noted that kidnapping that is necessarily and incidentally committed during a robbery cannot be the basis of a charge of kidnapping in addition to a charge of robbery. That is so because crimes involving the same facts are included offenses. *See* HRS § 701–109(4)(a). Conversely, a kidnapping that was not necessarily and incidentally committed during a robbery may be charged as a separate offense in addition to the robbery charge.

*Id.* at 649, 706 P.2d at 1325.

Relying on *Correa*, Defendant argues that he could not be convicted of the kidnapping charge in addition to the sexual assault charges if the jury did not find "beyond a reasonable doubt, that the [k]idnapping restraint 'occurred separately in time' from the "strong compulsion" utilized for the sexual assault counts." We agree.

HRS § 701–109 provides, in relevant part, as follows:

> (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
>
> > (a) One offense is included in the other, as defined in subsection (4) of this section[.]
> >
> > \* \* \*
>
> (4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
>
> > (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> >
> > (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
> >
> > (c) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a different state of mind indicating lesser degree of culpability suffices to establish its commission.

In *State v. Horswill*, 75 Haw. 152, 857 P.2d 579 (1993), the supreme court construed the foregoing statutory section as "restrict[ing] the prosecution's power to convict a defendant of two different [statutory] offenses involving the same conduct." *Id.* at 162, 857 P.2d at 584. The court explained that

> [a] defendant may not be convicted of both charged offenses if one is an "included" offense as defined by HRS § 701–109(4). *However, where two different criminal acts are at issue, supported by different factual evidence, even though separated in time by only a few seconds, one offense by*

*definition cannot be included in the other.* Thus, it is possible for a defendant in the context of one criminal transaction to commit several acts independently violative of one or more statutes, and he or she may be punished for all of them if charges are properly consolidated by the prosecution in one trial.

*Id.* (citations omitted; emphasis added).

In *Horswill*, as in this case, the defendant contended that the trial court committed plain error in convicting him of kidnapping in addition to sexual assault and assault. The facts adduced at trial indicated that the defendant had entered the home of the complainant, shoved his fingers down her throat, and punched her until she lost consciousness. When the complainant regained consciousness, she heard her daughter calling her and walked to her daughter's room. There she found the defendant holding her daughter down. The defendant then approached the complainant, shoved his fingers down her throat again, and returned his attention to complainant's daughter. When complainant attempted to call out to her brother, who lived next door, the defendant began choking her. The complainant's next remembrance was of lying on the floor and feeling the defendant insert what she believed was the handle of a butter knife into her vagina. The defendant then led complainant to her bedroom. Since the complainant had noticed, en route to her bedroom, that her daughter's hands and mouth were taped, she requested that the tape be removed. Complying with this request, the defendant then went to the daughter's room to untape daughter. He then returned to complainant's bedroom and committed numerous sexual acts upon complainant.

The supreme court, concluding that there was no plain error, held:

[The defendant] completed the act of kidnapping when he first entered the home and restrained [c]omplainant in her bed. Any subsequent restraint of [c]omplainant, which continued throughout the subsequent sexual assault and assault, was not necessary to the perpetration of the kidnapping.

*Id.* at 163, 857 P.2d at 584.

Unlike in *Horswill*, ·the evidence in this case reveals that Defendant did not terminate his leg restraint of Complainant until all the alleged sexual assaults had been committed. In other words, Defendant's leg restraint of Complainant occurred concurrently with his acts of sexual assault. Therefore, we agree with Defendant that the jury could not rely on the same leg restraint to convict him of both the kidnapping and sexual assault charges.

The State maintains, however, that the kidnapping count against Defendant was based on evidence distinct from the leg restraint. Specifically, the State claims, "Defendant restrained [Complainant] with the intent of committing a sexual offense when he locked his office door." We find no merit to the State's argument.

The State charged Defendant with kidnapping, in violation of HRS § 707–720(1)(d). Under this statutory provision, kidnapping is committed if a "person intentionally or knowingly restrains another person with intent to . . . subject that person to a sexual offense." Complainant testified that Defendant did not lock the door to his office until after he had wrapped his legs around Complainant and "held [her] butt," the factual basis for Count 1, and rubbed her vagina back and forth with his hands, the factual basis for Count 2. Since Defendant had allegedly committed two sexual offenses before he locked the door, we fail to see how the door-locking could constitute a restraint with intent to subject Complainant to a sexual offense.

Since there was no evidence of any other restraint of Complainant, and Complainant's testimony established that Defendant's leg restraint continued throughout his sexual assaults of her, we agree that Defendant could not be convicted for kidnapping in addition to the sexual assault counts.

### E. *The Deputy Prosecutor's Closing Argument*

■ Defendant contends that the deputy prosecutor committed prosecutorial miscon-

duct during closing argument by (1) offering personal opinions about the credibility of the trial witnesses; (2) arguing that Defendant, who was "desperate to save his skin," paid a defense witness, who was a "hired gun" "to come here and to lie to you" and "get him off the hook"; and (3) reminding the jury about testimony by Complainant and Officer Baysa that Defendant had initially walked by the police officers investigating Complainant's allegations of sexual assault and when the officers called to talk to him, Defendant "was nervous."

Because the record reveals that Defendant's trial attorney did not object to the foregoing arguments, we must determine whether the deputy prosecutor's remarks were "improper and, if so, whether such misconduct constituted plain error that affected [Defendant's] substantial rights." *State v. Clark*, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996) (citation omitted). After reviewing the transcripts of the deputy prosecutor's entire argument, we are convinced that plain error was not committed.

As noted previously, this case essentially boiled down to a credibility contest between the State's witnesses and Defendant's witnesses. The State's witnesses included Complainant, several Consolidated employees who worked with Complainant and supported her version of the events, and the police officers who participated in the investigation of Complainant's charges against Defendant. The defense witnesses included Defendant, who totally denied committing the offenses against Complainant, Carmen Albritton, a Consolidated employee who had observed Complainant massaging fellow Consolidated employees, and Jerome Phillips (Jerome), who was flown in by Defendant from Mexico to testify. The gist of Jerome's testimony was that he dropped by the Consolidated office on October 18, 1992, hoping to ask Defendant for a job. While there, he peeked into Defendant's office and saw a "good looking blonde" lady, standing over Defendant with her hands on his shoulders. According to Jerome, the lady was not crying or exhibiting any signs of distress.

Several Consolidated employees sharply disputed that Jerome was present at the office on the day in question. Additionally, two witnesses testified that while they were waiting to testify in other cases, they heard Jerome, who was also waiting to testify in this case, (1) make fun of a witness in Defendant's trial who was getting paid $20 in witness fees to testify; (2) comment that he had gotten his plane fare and lodging paid for by the defense; and (3) request information about reimbursement procedures for his own witness costs.

A prosecutor is allowed, during closing argument to "state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence." *State v. Clark*, 83 Hawaiʻi at 304, 926 P.2d at 209 (citations omitted). Moreover, it is well within the range of a prosecutor's adversarial responsibilities to highlight inconsistencies in testimony offered by a defendant, comment on the credibility of the witnesses, and "in the process, ... belittle and point to the improbability and untruthfulness of specific testimony." *Id.* at 305, 926 P.2d at 210 (citations omitted).

Based on our review of the evidence offered at trial, as well as the deputy prosecutor's entire closing argument, we conclude that the deputy prosecutor did not exceed the permissible limits of his prosecutorial responsibilities by highlighting the inconsistencies between the testimony of the State and defense witnesses, appealing to the common sense of the jurors, suggesting reasonable inferences from the evidence, and urging them to reject the defense version of the facts as lacking credibility.

## CONCLUSION

For the foregoing reasons, we reverse Defendant's conviction for compensation by an adult. We also vacate Defendant's conviction of five counts of sexual assault in the third degree and one count of kidnapping and remand for further proceedings. On remand, the State must elect between the kidnapping and sexual assault counts. *Cf. State v. Arceo*, 84 Hawaiʻi 1, 32–33, 928 P.2d 843, 874–75 (1996) (holding that in sexual assault prosecution in which multiple acts of sexual contact were alleged to support one count of

sexual assault in the third degree and multiple acts of sexual penetration were alleged to support a second count of sexual assault in the first degree, failure of prosecutor to elect which act prosecutor was relying on to support each count and trial court's failure to instruct the jury that it must unanimously agree that the defendant committed the same specific act in reaching guilty verdicts as to each count, constituted plain reversible error). If, on remand, the State elects in favor of the kidnapping count, the circuit court shall re-enter a judgment of conviction on the kidnapping count and dismiss the sexual assault counts. If, on remand, the State elects in favor of the sexual assault counts, the circuit court shall dismiss the kidnapping charge and conduct a new trial on the sexual assault counts. During the new trial, the circuit court should include jury instructions on the LIO of fourth degree sexual assault.