**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **JAMES EASTER LESSARY**, Defendant–Appellant

NO. 15679

(CR. NO. 91–0062(1))

JANUARY 10, 1994

LUM, C.J.,* MOON, KLEIN, LEVINSON, JJ., AND RETIRED JUSTICE HAYASHI,** ASSIGNED BY REASON OF VACANCY

---

*Chief Justice Lum, who heard oral argument, retired from the court on March 31, 1993. *See* HRS § 602–10 (1985).

**Retired Justice Hayashi, who heard oral argument in this case, was unavailable for signature when this opinion was filed. *See* HRS § 602–10 (1985).

OPINION OF THE COURT BY KLEIN, J.

James Easter Lessary was charged with committing the offenses of Abuse of a Family or Household Member (Abuse) in violation of Hawai'i Revised Statutes (HRS)

§ 709–906 (Supp. 1992),[1] Unlawful Imprisonment in the First Degree (Unlawful Imprisonment) in violation of HRS § 707–721(1)(a) (1985),[2] and Terroristic Threatening in the First Degree (Terroristic Threatening) in violation of HRS § 707–716(1)(d) (Supp. 1992).[3] After Lessary was found guilty of the Abuse charge in family court, the circuit court dismissed the Unlawful Imprisonment and Terroristic Threatening charges on double jeopardy grounds. The State appeals pursuant to HRS § 641–13(1) (Supp. 1992) from the order dismissing the charges. For the reasons set forth below, we affirm in part and reverse in part.

## I. FACTS
### The Incident

The alleged criminal episode began on the morning of April 4, 1991, when Lessary drove to the place of work of his estranged wife (the victim). Upon arrival, Lessary got

---

[1] HRS § 709–906(1) (Supp. 1992) provides in pertinent part that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]"

[2] HRS § 707–721(1)(a) (1985) provides that "[a] person commits the offense of unlawful imprisonment in the first degree if he knowingly restrains another person [u]nder circumstances which expose the person to the risk of serious bodily injury[.]"

[3] HRS § 707–716(1)(d) (Supp. 1992) provides that "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening [w]ith the use of a dangerous instrument."

"A person commits the offense of terroristic threatening if he threatens, by word or conduct, to cause bodily injury to another person . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]" HRS § 707–715 (1985).

out of his jeep, walked into the office, grabbed her by the head and hair, and threw her against a wall. A co–worker, hearing the commotion, intervened between Lessary and the victim. Lessary backed off slightly, but when the victim refused to leave with him, he picked up a pair of scissors and, wielding them like a knife, pointed them towards the victim and her co–worker. Lessary, who said he "just wanted to talk to her," grabbed the victim by the front of her shirt and, while holding the scissors in his free hand, dragged her from the office to his jeep. When she refused to enter the jeep, Lessary pointed the scissors at her stomach and told her that he would stab her if she continued to refuse. After they were both in the jeep, he sped away and threw the scissors out the window shortly thereafter. Lessary drove them to a canefield where they talked together for several hours. Lessary eventually decided to surrender and allowed the victim to drive them out of the canefield.

## The Prosecutions

On April 5, 1991, Lessary was charged by complaint in district court with Terroristic Threatening and Kidnapping.[4] On the same day, Lessary was charged by complaint in family court with Abuse.

At the April 29, 1991 family court arraignment and plea hearing, Lessary pled "no contest" to the Abuse charge in exchange for the State recommending a sentence of five days incarceration on the Abuse charge

---

[4] At the April 9, 1991 preliminary hearing, the Kidnapping charge was amended to an Unlawful Imprisonment charge and the case was committed to circuit court.

and dismissing a pending contempt of court charge.[5]  In response to the family court's inquiry concerning the facts supporting the Abuse charge, the prosecutor responded as follows:

> [T]he defendant was reported to have gone to the victim's job site within the office and had thrown her against the wall, your Honor.  The defendant then dragged [the victim] out of the office into his vehicle.
>
> Injuries included redness to the victim's left ear from being thrown against the wall and pain to the right hamstring area and right elbow from being dragged to his car.

Based on these representations, the court found Lessary guilty of Abuse and sentenced him to five days incarceration and one year probation.

The next day, April 30, 1991, in circuit court, Lessary pled "not guilty" to both the Terroristic Threatening and Unlawful Imprisonment charges and requested a jury trial. Subsequently, Lessary moved to dismiss both charges on double jeopardy grounds pursuant to our holding in *State v. Kipi*, 72 Haw. 164, 811 P.2d 815, *cert. denied*, 112 S. Ct. 194 (1991).  The circuit court granted the motion to dismiss, holding that

> as a result of the No Contest plea entered by the Defendant and his conviction on April 29, 1991 . . . , the prosecution of the instant cause is barred as a matter of law by the double jeopardy provisions of the United States and Hawaii Constitu-

---

[5] Lessary had been charged with Criminal Contempt of Court when he failed to appear at the initial family court arraignment and plea hearing.

tions, as applied under the "single occurrence" test referred to by Justice Scalia in his dissenting opinion in *Grady v. Corbin*, ___ U.S.___, 109 L. Ed. 2d 548, 576, 110 S. Ct. 2084, 2096 (1990) and adopted by the Supreme Court of Hawaii in *State v. Kipi*, 72 Haw. 164, 176 (1991).

The State now appeals the dismissal of both the Terroristic Threatening and Unlawful Imprisonment charges.[6]

## II. DISCUSSION

At the outset, we note that the trial court misunderstood our holding in *Kipi*. The narrow question before the court in *Kipi* was whether the prosecution at issue was barred by the United States Constitution under the test set forth in *Grady v. Corbin*, 495 U.S. 508 (1990).[7] All references to the "same conduct" test were made in the context of applying the *Grady* rule, and the sole refer-

---

[6] The State originally conceded that the Unlawful Imprisonment charge was barred under the *Grady* rule and did not contest the trial court's dismissal of that charge. After *Grady* was overruled by *United States v. Dixon*, 113 S. Ct. 2849 (1993), however, the State filed an amended opening brief seeking to challenge the dismissal of the Unlawful Imprisonment charge for the first time. Because of our holding in this case, we need not decide whether the State is estopped from challenging the dismissal of the Unlawful Imprisonment charge.

[7] We defined the constitutional issue addressed in *Kipi*, 72 Haw. at 168, as follows:

Can actions or evidence that supported a contempt prosecution also be used to support a subsequent prosecution on substantive criminal charges without violating the double jeopardy rules set forth by the United States Supreme Court in *Grady v. Corbin*, 110 S. Ct. 2084 (1990)?

ence to the "single occurrence" test was made in dictum and did not in any way purport to establish a new test under the Hawai'i Constitution. Thus, *Kipi* did not address double jeopardy protection on an independent state constitutional basis and the trial court's reliance on any test "adopted by the Supreme Court of Hawaii" was misplaced.

Furthermore, even if the trial court's dismissal of the charges had been proper under the *Grady* rule, the United States Supreme Court subsequently overruled *Grady* and reinstated the "same elements" test that was first set forth in ***Blockburger v. United States***, 284 U.S. 299 (1932), as the sole test under the double jeopardy clause of the United States Constitution. ***United States v. Dixon***, 113 S. Ct. 2849 (1993). According to *Blockburger*,

> [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not.

284 U.S. at 304. Lessary concedes that under the "same elements" test, the prosecution of the Unlawful Imprisonment and Terroristic Threatening offenses is not barred.[8]

---

[8] Abuse requires proof of physical abuse; Unlawful Imprisonment and Terroristic Threatening do not. Unlawful Imprisonment requires proof of restraint; Abuse and Terroristic Threatening do not. Terroristic Threatening requires proof of a threat to cause bodily injury; Abuse and Unlawful Imprisonment do not. Thus, Abuse, Unlawful Imprisonment, and Terroristic Threatening are all "different" offenses under the double jeopardy clause of the United States Constitution.

Although the trial court's decision was based on a misunderstanding of our decision in *Kipi*, which was in turn based on an interpretation of the United States Constitution that is no longer controlling, Lessary urges us nonetheless to affirm the dismissal of the charges on independent state constitutional grounds. Article I, section 10 of the Hawai'i Constitution provides in pertinent part:

> No person shall . . . be subject for the same offense to be twice put in jeopardy.

Although this language is virtually identical to the double jeopardy clause of the United States Constitution,[9] we are not bound to give provisions of the Hawai'i Constitution the same interpretations as those given under the United States Constitution. *Oregon v. Hass*, 420 U.S. 714 (1975). When the United States Supreme Court's interpretation of a provision present in both the United States and Hawai'i Constitutions does not adequately preserve the rights and interests sought to be protected, we will not hesitate to recognize the appropriate protections as a matter of state constitutional law. *See, e.g.,* *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974) ("We have not hesitated in the past to extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions in the Federal Bill of Rights when logic

---

[9] The fifth amendment of the United States Constitution provides in pertinent part that:

> No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.

The provisions of the fifth amendment are applicable to the States through the fourteenth amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

and a sound regard for the purposes of those protections have so warranted.").

We will only extend the double jeopardy protections of the Hawai'i Constitution, however, if we find that the protections afforded by the United States Constitution are not adequate. Therefore, our analysis begins with a consideration of the protections provided under the United States Constitution. As noted above, the *Blockburger* test is currently the only bar to successive prosecutions under the United States Constitution. In *Blockburger*, the Supreme Court addressed the applicability of the double jeopardy clause in the context of a single prosecution for multiple offenses. The Court ruled that the double jeopardy clause protects individuals from receiving multiple punishments for the "same offense," even in a single prosecution, and created the "same elements" test to implement that protection.

Protection against multiple punishments, however, is not the only protection that the double jeopardy clause provides. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). *Blockburger* and its progeny focused almost exclusively on whether the legislature intended to allow the imposition of multiple punishments for the commission of a particular act. *See, e.g., Missouri v. Hunter*, 459 U.S. 359 (1983).

> To give the government broad control over the number of punishments that may be meted out for a single act, however, is consistent with the general rule that the government may punish

as it chooses, within the bounds contained in the Eighth and Fourteenth Amendments. . . . "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."

*Dixon*, 113 S. Ct. at 2882 (Souter, J., concurring in part and dissenting in part) (quoting *Ohio v. Johnson*, 467 U.S. 493, 499, *reh'g denied*, 468 U.S. 1224 (1984)).

Because of its focus on the statutory definitions of offenses, however, the "same elements" test does not prevent the government from initiating multiple prosecutions against an individual based on a single act as long as the subsequent prosecutions are for offenses with "different" elements. In *Grady*, the United States Supreme Court recognized the dangers inherent in allowing the government to pursue multiple prosecutions against an individual. The Court described the dangers as follows:

Successive prosecutions, however, whether following acquittals or convictions, raise concerns that extend beyond merely the possibility of an enhanced sentence[.] The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity[.] Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increas-

ing the risk of an erroneous conviction for one or more of the offenses charged. Even when a State can bring multiple charges against an individual under *Blockburger*, a tremendous additional burden is placed on that defendant if he must face each of the charges in a separate proceeding.

*Grady*, 495 U.S. at 518–19 (citations and footnote omitted).

Although *Dixon* overruled *Grady* and reestablished the "same elements" test as the sole protection against double jeopardy, four justices continued to believe that the *Blockburger* test alone does not provide adequate protection. *See Dixon*, 113 S. Ct. at 2868 (White, J., concurring in part and dissenting in part), 2879 (Blackmun, J., concurring in part and dissenting in part), 2881 (Souter, J., concurring in part and dissenting in part).[10] The State urges us to follow *Dixon* and argues that any test more restrictive than the "same elements" test would contravene the public policy of having different courts handle different offenses (*e.g.*, traffic court for traffic violations, juvenile court for offenses committed by minors, and family court for intra–family offenses committed by adults). In "instances of successive prosecutions," however, "the interests of the *defendant* are of paramount concern." *Dixon*, 113 S. Ct. at 2870–71 (White, J., concurring in part and dissenting in part) (emphasis in original). We do not believe that the State's interest in prosecuting different offenses in different courts outweighs a defendant's "paramount" interest in being free from vexatious

---

[10] Justice Stevens joined in the opinions of Justice White and Justice Souter.

multiple prosecutions. Moreover, the State should not be allowed to circumvent the constitutional prohibition against double jeopardy by creating a variety of courts, each having limited jurisdiction, in which to bring successive prosecutions that could not otherwise be pursued.[11]

Thus, we are not persuaded by the State's argument and agree with the majority in *Grady* and the "dissenters" in *Dixon* that individuals should be protected against multiple prosecutions even when multiple punishments are permissible under the "same elements" test. Therefore, we conclude that the interpretation given to the double jeopardy clause by the United States Supreme Court in *Dixon* does not adequately protect individuals from being "subject for the same offense to be twice put in jeopardy."

Having concluded that the protections afforded under the United States Constitution are inadequate, we must determine what further protections are required by the Hawai'i Constitution. The protections must ensure that individuals are not subjected to multiple prosecutions for a single act. The "same conduct" test set forth by the United States Supreme Court in *Grady* attempted to provide those protections. The Court there held that

> the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes

---

[11] In addition, the legislature apparently intended that an individual who performed acts that constituted both Abuse and another offense would be subjected to only one prosecution. *See* HRS § 709–906(10) (Supp. 1992) ("This section shall not operate as a bar against prosecution under any other section of this Code *in lieu of* prosecution for abuse of a family or household member." (Emphasis added)).

an offense for which the defendant has already been prosecuted.

*Grady*, 495 U.S. at 521 (footnote omitted).

Lessary urges us to extend the protections of the Hawai'i Constitution even further than the *Grady* rule and adopt the "same episode" test. Under the "same episode" test, all offenses "that grow out of a single criminal act, occurrence, episode, or transaction" would be considered the "same offense" for purposes of determining whether the guarantee against being "subject for the same offense to be twice put in jeopardy" bars a second prosecution. *See Ashe v. Swenson*, 397 U.S. 436, 453–54 (1970) (Brennan, J., concurring). Under that test, once an individual has been prosecuted for one offense, that individual cannot be later prosecuted for any other offense committed during the same episode, even if the offenses were committed by distinct acts. For example, if an individual kidnapped, then raped, and finally murdered another person, and was initially prosecuted for the kidnapping offense alone, the "same episode" test would preclude any subsequent prosecution for the rape or murder. *See Ex parte McWilliams*, 634 S.W.2d 815, 822–824 (Tex. Cr. App. 1980) (on rehearing) (abandoning "carving" doctrine under double jeopardy clause because "same criminal episode or transaction" test applicable as part of that doctrine would prohibit multiple convictions in that situation and thereby "encourage[] crime"), *cert. denied*, 459 U.S. 1036 (1982). We do not believe this is the result intended by the double jeopardy clause. The double jeopardy clause should protect an individual from being twice put in jeopardy for a single act; it should not protect an individual from separate prosecutions for separate acts. Therefore, we hold that the double jeopardy clause of

the Hawai'i Constitution does not require the application of the "same episode" test.[12]

The "same conduct" test as set forth in *Grady*, on the other hand, protects individuals from multiple prosecutions for the same act without unnecessarily restricting the ability of the State to prosecute individuals who perform separate acts that independently constitute separate offenses. In addition, the "same conduct" test was applied in criminal prosecutions in Hawai'i for the three years that *Grady* was the applicable law under the United States Constitution. We believe that the application of the *Grady* rule is necessary to afford adequate double jeopardy protection, and, therefore, we adopt the "same conduct" test under the Hawai'i Constitution.[13]

---

[12] In most cases, however, the Hawai'i legislature has mandated the joinder of all offenses "arising from the same episode." HRS § 701–109(2) (1985) provides in pertinent part:

> Except [when separate trials are ordered], a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

The prosecution of the Unlawful Imprisonment and Terroristic Threatening charges in the instant case is not barred by this statute because those charges and the Abuse charge were not "within the jurisdiction of a single court." *See State v. Kipi*, 72 Haw. 164, 811 P.2d 815, *cert. denied*, 112 S. Ct. 194 (1991).

[13] Although the "same conduct" test bars the State from proving the conduct element of an offense using evidence of acts for which the defendant had already been prosecuted, it does not absolutely preclude the State from introducing evidence of those acts for other purposes. For example, the State may be allowed to introduce evidence of Lessary's acts of Abuse in order to prove Lessary's state of mind at the time of the alleged Terroristic Threatening. The admissibility of this evidence is, of course, subject to the Hawai'i Rules of Evidence

We now address the application of the "same conduct" test to the offenses at issue in the instant case. Because the State concedes that prosecution of the Unlawful Imprisonment charge is barred by the "same conduct" test,[14] the only remaining issue is whether prosecution of the Terroristic Threatening charge is also barred.

Under the "same conduct" test, prosecution of the Terroristic Threatening charge is barred if the State, to establish the conduct element of Terroristic Threatening, will prove acts of the defendant on which the State relied to prove the conduct element of the Abuse offense for which Lessary had already been prosecuted. The conduct element of Abuse is physically abusing a family or household member. In the Abuse prosecution, Lessary's acts of throwing the victim against the office wall and dragging her from the office to his jeep were used to prove that Lessary physically abused the victim. The State cannot use those acts to prove the conduct element of Terroristic Threatening. The conduct element of Terroristic Threatening is threatening to cause bodily injury to another

---

(HRE). *See, e.g.*, HRE Rule 404(b) (1985). In particular, the trial court has the discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." HRE Rule 403 (1985). Furthermore, when a defendant is acquitted in one prosecution, the State may be precluded from relitigating certain issues in subsequent prosecutions under the doctrine of collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436 (1970).

[14] The conduct element of Unlawful Imprisonment is restraining another person. The State concedes that in order to prove that Lessary restrained the victim, it would have to prove either that Lessary threw her against the office wall or that he dragged her to his jeep. Those acts had been used to prove the conduct element of the Abuse charge in the earlier prosecution. Therefore, under the "same conduct" test, prosecution of the Unlawful Imprisonment charge is barred.

person. The State contends that it will rely on different acts, namely Lessary's act of brandishing the scissors towards the victim and her co-worker in the office and his acts of pointing the scissors at the victim's stomach and telling her that he would stab her if she refused to enter his jeep, to prove that Lessary threatened to cause bodily injury.

Lessary argues that because the alleged threats were so closely intertwined with the acts of abuse, they constituted the "same conduct." Lessary, however, is confusing the "same conduct" test with the "same episode" test. We have held that:

> the test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge.

*State v. Servantes*, 72 Haw. 35, 38–39, 804 P.2d 1347, 1349 (1991) (interpreting the "arising from the same episode" language of HRS § 701–109(2)) (quoting *State v. Carroll*, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981)). Although we agree that the Terroristic Threatening and Abuse charges arose from the same episode, as discussed above, the Hawai'i Constitution does not require application of the "same episode" test. Because the conduct element of the Terroristic Threatening charge can be established by proof of acts independent of the acts alleged in the Abuse prosecution, the two offenses are not based on the "same conduct." Therefore, the prosecution of the Terroristic Threatening charge is not barred by the double jeopardy clause of the Hawai'i Constitution.

## III. CONCLUSION

Although the double jeopardy clause of the United States Constitution does not bar the prosecution of either the Unlawful Imprisonment or Terroristic Threatening charges, we hold that the Hawai'i Constitution provides greater protection against multiple prosecutions than does the United States Constitution. The double jeopardy clause of the Hawai'i Constitution prohibits the State from pursuing multiple prosecutions of an individual for the same conduct. Prosecutions are for the same conduct if any act of the defendant is alleged to constitute all or part of the conduct elements of the offenses charged in the respective prosecutions. Under the "same conduct" test, prosecution of the Unlawful Imprisonment charge is barred while prosecution of the Terroristic Threatening charge is allowed. Therefore, we affirm the circuit court's order with respect to the dismissal of the Unlawful Imprisonment charge, reverse the order with respect to the dismissal of the Terroristic Threatening charge, and remand for further proceedings in accordance with this opinion.

*Mark R. Simonds*, Deputy Prosecuting Attorney, for plaintiff–appellant.
*Anthony L. Ranken* for defendant–appellee.