995 P.2d 323

Clement Jiro TOMOMITSU,
Petitioner–Appellant,

v.

STATE of Hawai'i, Respondent–Appellee.

No. 21545.

Intermediate Court of Appeals of Hawai'i.

Jan. 12, 2000.

As Amended Jan. 14, 2000.

Certiorari Dismissed March 1, 2000.

William A. Harrison, on the briefs, Honolulu, for Petitioner–Appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, for Respondent–Appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by BURNS, C.J.

Petitioner–Appellant Clement Jiro Tomomitsu (Tomomitsu) appeals the circuit court's April 9, 1998 Findings of Fact, Conclusions of Law and Order Denying Petition for Post Conviction Relief denying his October 27, 1997 Hawai'i Rules of Penal Procedure (HRPP) Rule 40 Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (HRPP Rule 40 Petition) without a hearing on the HRPP Rule 40(f) ground that Tomomitsu's HRPP Rule 40 Petition was "patently frivolous and without a trace of support either in the record or from other evidence submitted by [Tomomitsu]." We affirm in part, vacate in part, reverse in part, and remand for entry of an order consistent with this opinion.

In this opinion, the following are among the questions we discuss and answer: [1]

1. What exception, if any, is there to the rule that a guilty plea made voluntarily and intelligently precludes a defendant from later asserting any non-jurisdictional claims?

2. When a defendant is convicted of Robbery in the First Degree for having robbed the victim of both items A and B, may the defendant also be convicted of Theft in the First Degree for having subsequently sold item A and of Theft in the Second Degree for having subsequently sold item B?

3. When a conviction of either (1) Robbery in the First Degree or (2) Theft in the First Degree and Theft in the Second Degree must be vacated and the corresponding charge(s) dismissed with prejudice, who makes the choice and on what basis?

1. We also discuss the issues of whether there was the ineffective assistance of counsel and a violation of substantive due process.

## BACKGROUND

On October 28, 1981, Tomomitsu was indicted in Criminal No. 56276 for Robbery in the Second Degree. It was alleged that on August 26, 1981, Tomomitsu punched a 16–year–old California tourist and took the youth's wallet with $5.00 in it. Tomomitsu pled guilty as charged and, on July 7, 1986, was sentenced to probation for five years, including one year in jail.

On December 10, 1981, Tomomitsu was indicted in Criminal No. 56516 for Burglary in the First Degree, Theft in the Third Degree, and Credit Card Theft. It was alleged that Tomomitsu and a friend entered another person's apartment and took a clock, a radio, and a credit card. It was further alleged that Tomomitsu, thereafter, sold those items to the undercover police storefront fence operation "Hukilau." Tomomitsu pled guilty as charged and, on July 7, 1986, was sentenced to a five-year term of probation, a one-year term of probation, and a six-month term of probation. The five-year term of probation and the one-year term of probation each included one year in jail.

Criminal No. 56517 is the result of a grand jury indictment and an amended grand jury indictment. On December 10, 1981, Tomomitsu was indicted for Theft in the First Degree (of a camera and camera accessories) on February 19, 1981, and Theft in the Second Degree (of a wristwatch) on February 25, 1981. On April 21, 1982, the charge of Robbery in the First Degree was added. It was alleged that on February 19, 1981, Tomomitsu robbed Per Alricson of a camera and wristwatch and, in doing so, Tomomitsu exhibited a gun at his waist. Tomomitsu sold the camera on February 19, 1981, and the wristwatch on February 25, 1981. Tomomitsu sold both items to the undercover police storefront fence operation "Hukilau." Tomomitsu pled guilty to the two theft charges and to the reduced charge of Robbery in the Second Degree and, on July 7, 1986, was sentenced to two five-year terms of probation and a one-year term of probation. The five-year terms included one year in jail. The one-year term included six months in jail. All terms of probation and jail ran concurrently.

Tomomitsu's memorandum in support of his HRPP Rule 40 Petition states in relevant part as follows:

> [Tomomitsu] seeks an **ORDER** in which his Second Degree Robbery conviction in Case No. 86–56517 is vacated and dismissed *nunc pro tunc* as of July 7, 1986, on independent state and federal constitutional grounds. Likewise, [Tomomitsu] seeks such an **ORDER** in Case NOs. 86–56276 and 86–56516.
>
> . . . .
>
> On February 3, 1993, in the District of Hawaii [Hawai'i], in Case No. 93–00172/ACK, [Tomomitsu] was indicted by a federal grand jury of violating title 18 USC § 922(g)(1) for possession by an ex-felon of a .22 caliber revolver. **EXHIBIT "E".**
>
> On February 8, 1993, the United States issued notice of its intent to seek enhanced penalties under 18 USC § 924(e) (Armed Career Criminal Act). In addition to an alleged withheld adjudication of guilt for battery in the State of Florida in 1979 (dismissed 1995), the United States charged as predicate "violent felony" offenses the burglary and robbery convictions [Tomomitsu] sustained in [circuit] court in 1986.
>
> On July 27, 1993, [Tomomitsu] was transported to the Federal Correctional Institution on Terminal Island (Los Angeles Harbor) for service of his mandatory 15–year sentence.

(Record references omitted; emphases in original.)

Tomomitsu's HRPP Rule 40 Petition asked the circuit court to set aside his conviction of Robbery in the Second Degree in Criminal No. 56517 based on the grounds of double jeopardy and the included offense definition in Hawai'i Revised Statutes (HRS) § 701–109(4)(a) (1993).

The circuit court concluded "that the requisite acts and mental state in taking the property (i.e.[,] the Robbery) are separate and distinct from the acts and mental state in passing the property (i.e.[,] the act of fencing which results in the Theft charge)."

## DISCUSSION

### 1.

In Criminal No. 56276, Tomomitsu committed Robbery in the Second Degree when he robbed a victim of $5.00.

In Criminal No. 56516, Tomomitsu was charged with Burglary in the First Degree, Theft in the Third Degree for taking a clock, Theft in the Third Degree for taking a radio, Theft in the Third Degree for selling the clock, Theft in the Third Degree for selling the radio, and Credit Card Theft for selling the credit card. He pled guilty to, and was convicted of, Burglary in the First Degree, Theft in the Third Degree for selling the clock and the radio, and Credit Card Theft for selling the credit card.

In Criminal No. 56517, Tomomitsu was charged with Robbery in the First Degree for robbing a victim of a camera and a wristwatch, Theft in the First Degree for selling the camera, and Theft in the Second Degree for selling the wristwatch.[2] He pled guilty to, and was convicted of, Robbery in the Second Degree for robbing the victim of the camera and the wristwatch, Theft in the First Degree for selling the camera, and Theft in the Second Degree for selling the wristwatch.

Tomomitsu contends that the

judgment in Case No. 86–56517 for Second Degree Robbery (Count III) was obtained in violation of HRS § 701–109(4)(a) [pertaining to included offenses] and the Double Jeopardy Clause of the Fifth Amendment of the [F]ederal Constitution (applicable to the states through the 14th Amendment) because [Tomomitsu] was previously sentenced for the lesser included offense charged in Counts I or II (theft).

Tomomitsu's right to challenge these judgments is limited by the following precedent:

2. The Deputy Prosecuting Attorney's recitation is as follows:

    After [Petitioner–Appellant Clement Jiro Tomomitsu (Tomomitsu) and his co-defendant] had relieved Mr. Ulricksen [sic] of his camera equipment and wrist watch on that same day, February 19, 1981, Mr. Tomomitsu and his friend Herbert Fredge [sic] (phonetic) went to

Generally, a guilty plea made voluntarily and intelligently precludes a defendant from later asserting any nonjurisdictional claims, including constitutional challenges to the pretrial proceedings. Although the defendant may still challenge the sufficiency of the indictment or other like defects bearing directly upon the government's authority to compel the defendant to answer to charges in court, claims of nonjurisdictional defects in the proceeding, such as unlawfully obtained evidence and illegal detention, will generally not survive the plea.

State v. Morin, 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990) (citations omitted). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). The above rules apply in Tomomitsu's case.

■ However, an exception to the above rules occurs "where on the face of the record[,] the court had no power to enter the conviction or impose the sentence." *Id.* This exception includes the occasion where "[a] defendant who has pleaded guilty may raise a claim the prosecution is barred by double jeopardy only if the defect appears on the face of the indictment" (1A C. Wright, *Federal Practice & Procedure: Criminal* § 175 at 228–29 (1999)), and it is apparent in the existing record. *Broce*, 488 U.S. at 576, 109 S.Ct. 757. Based on this exception, we will examine the charges against Tomomitsu. The question is whether the record shows that the July 7, 1986 judgment twice convicted Tomomitsu of the same offense(s).

### 2.

HRS § 708–830 (1993) specifies eight ways of committing theft.[3] Obtaining the property

Brewer's Liquors and sold those items, sold those items to an undercover detective. They may have sold the watch several days later, I'm not sure, I have to look at the indictment. But it's again detaining [disposing] stolen property.

3. "[W]here a defendant in the context of one criminal scheme or transaction commits several acts independently violative of one or more stat-

is one way (HRS § 708–830(1)). Disposing of the property is another way (HRS § 708–830(7)). The Commentary on HRS §§ 708–830 to –833 states in relevant part as follows:

It should be noted that in all theft offenses, the requisite mental state is intent to deprive the owner of the value of property or services. Although in most instances the actor will intend to appropriate the value of property or services for the actor's own benefit, that is not the gravamen of the offense.

Thus, HRS § 708–835 (1993) states as follows:

**Proof of theft offense.** A charge of an offense of theft in any degree may be proved by evidence that it was committed in any manner that would be theft under section 708–830, notwithstanding the specification of a different manner in the indictment, information, or other charge, subject only to the power of the court to ensure a fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

The Commentary on HRS § 708–835 states in relevant part as follows:

As outlined in the commentary on [HRS] § 708–830, one of the principal reasons for the consolidation of various related common-law and statutory offenses under the single theft statute is to eliminate pointless procedural obstacles in prosecution. The possibility of quashing a theft indictment because of variance would substantially pervert the virtue of simplicity which such consolidation seeks to achieve. Subject only to the court's power to ensure a fair trial ..., any charge of theft may be proved by demonstration, beyond a reasonable doubt, that the accused's actions came

within the definition of one of the subsections of [HRS] § 708–830.

(Footnote omitted.)

■ In light of the above, we conclude that the law does not permit the conviction a defendant of two counts of theft for, first, having obtained or taken an item of property and, second, for having disposed of or sold the same item of property. The taking and/or selling of one item of property is only one theft.

■ In Criminal Nos. 56276 and 56516, Respondent–Appellee State of Hawai'i (the State) properly charged and convicted Tomomitsu. With respect to Criminal No. 56517, the statutory definition of Robbery in either the First or Second Degree requires that the act be done "in the course of committing theft." HRS §§ 708–840(1) and –841 (1993). Tomomitsu was charged with Robbery in the First Degree and pled to and was convicted of Robbery in the Second Degree (Count III), and the theft of the camera and the wristwatch were alleged as material elements of that robbery.[4] Tomomitsu was also charged with, and convicted of, Theft in the First Degree for selling the camera (Count I) and Theft in the Second Degree for selling the wristwatch (Count II). As noted previously, the taking and the sale of the camera were one theft. Likewise, the taking and the sale of the wristwatch were one theft. Convicting Tomomitsu of Robbery in the Second Degree (Count III) for having taken the camera and the wristwatch left no theft to support the charges of Theft in the First Degree for selling the camera (Count I) and Theft in the Second Degree for selling the wristwatch (Count II). Thus, in Criminal No. 56517, the convictions of Theft in the First Degree (Count I) and Theft in Second Degree (Count II) must be reversed. *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998).[5]

utes, he may be punished for all of them if charges are properly consolidated by the State in one trial." *State v. Pia*, 55 Haw. 14, 19, 514 P.2d 580, 585 (1973).

4. Although Respondent–Appellee State of Hawai'i (the State) could have used either the theft of the camera or the theft of the wristwatch as the necessary material element to support its

charge of Robbery in the First Degree, the State, in this case, used both.

5. *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), is clear precedent that the proper action is to "reverse" the excessive convictions. However, when a conviction is "reversed[,]" the judgment is changed from "guilty" to "not-guilty," and that is not what has happened in the case. What has happened in the case is that Tomomit-

3.

■ Tomomitsu contends that the convictions of Theft in the First Degree (Count I) and Theft in the Second Degree (Count II) should remain, and the conviction of Robbery in the Second Degree (Count III) should be set aside because, in chronological order, he was convicted of the theft counts before the robbery count. We disagree. The July 7, 1986 judgment was simultaneous as to all three counts.

In a related situation, but in a direct appeal, the Hawai'i Supreme Court decided as follows:

> When a defendant is convicted of an offense and a "lesser" included offense, we simply reverse the conviction and sentence for the "lesser" included offense. . . .

> In the instant case, however, the included offense is murder in the second degree, an offense of a higher class and grade than HRS § 134–6(a), a class A felony. Under these circumstances, where (1) the second degree murder conviction was otherwise valid and (2) the HRS § 701–109 violation can be remedied by reversing the HRS § 134–6(a) conviction and sentence, we believe that it would be manifestly unfair to the prosecution and to the public to reverse the second degree murder conviction simply because it was the included offense.

*Id.* at 3–4, 950 P.2d at 1203–04 (citations omitted).

In this situation where either the conviction of Robbery in the Second Degree or the convictions of Theft in the First Degree and Theft in the Second Degree must be reversed, the court selects the option that least disrupts the court's judgment. Since Theft in the First Degree is a class B felony, HRS § 708–830.5 (1993), and Theft in the Second Degree is a class C felony, HRS § 708–831 (1993), whereas Robbery in the Second Degree is a class B felony, HRS § 708–841(2), the choice in Tomomitsu's case, obviously, is to reverse the included theft convictions.

su has been found guilty of three offenses but lawfully can be convicted of only one. Therefore, it appears that the appropriate procedure

4.

Tomomitsu asked the circuit court to set aside his convictions because of his defense counsel's ineffective assistance in failing to negotiate a better plea agreement in Criminal No. 56276 by reducing Robbery in the Second Degree to the included offense of Petty Theft or Theft in the Third Degree and, in Criminal No. 56516, by reducing Burglary in the First Degree to the included offense of Trespass or Simple Trespass.

When the denial of the right to effective assistance of counsel is raised, the question is: "When viewed as a whole, [was] the assistance provided [to the defendant] 'within the range of competence demanded of attorneys in criminal cases[?]' " The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. This court will not judge the assistance provided the defendant ineffective solely by hindsight. A defendant who meets the two-prong test has proven the "denial of assistance 'within the range of competence demanded of attorneys in criminal cases.' "

*State v. Aplaca,* 74 Haw. 54, 66–67, 837 P.2d 1298, 1305 (1992) (citations and footnote omitted).

■ We agree with the circuit court that Tomomitsu failed to allege, and the record does not show, a specific error or omission reflecting counsel's lack of skill, judgment, or diligence.

5.

Tomomitsu contends that he was denied substantive due process of law because he successfully completed five years of probation in the above cases, but no Certificate of Discharge restoring his civil rights was issued, and the copy of the discharge papers,

would be to vacate the excessive convictions and remand for a dismissal of those counts with prejudice.

which he alleges HRS § 831–5(a) requires the probation division to file with the court, was never filed.

HRS § 831–5(a) (1993) states:

If the sentence was in this State, the order, certificate, or other instrument of discharge, given to a person sentenced for a felony upon the person's discharge after completion of service of the person's sentence or after service under probation or parole, shall state that the defendant's rights to vote and to hold any future public office, of which the defendant was deprived by this chapter, are thereby restored and that the defendant suffers no other disability by virtue of the defendant's conviction and sentence except as otherwise provided by this chapter. A copy of the order or other instrument of discharge shall be filed with the clerk of the court of conviction.

HRS § 831–5(a) (1993) is substantially the same as HRS § 831–5(a) (1976).

In a March 6, 1995 letter responding to Tomomitsu's February 21, 1995 letter requesting "official notification that [his] civil rights have been restored[,]" the Adult Probation Division of the First Circuit Court (APD) advised Tomomitsu that his probation sentences in the three cases "all expired on July 6, 1991."

In a December 29, 1995 letter to the Office of the Federal Public Defender, the APD stated in relevant part as follows:

In response to your request for a copy of the certificate of discharge from probation pursuant to HRS Section 831–5 for Clement Tomomitsu, please be advised that certificates were not routinely issued to probationers the year that Mr. Tomomitsu's probation term expired. Therefore, Mr. Tomomitsu was not given a certificate of discharge at that time. Individuals requesting such certificates have been given letters from this office indicating that they have completed the term of probation. We would be happy to provide one for Mr. Tomomitsu upon request.

Tomomitsu contends that his

convictions for a burglary and two robberies should be vacated and dismissed *nunc pro tunc* because of the [S]tate's failure to

maintain [Tomomitsu]'s probation file and to issue him a timely Certificate of Discharge upon his successful completion of five years' probation, in violation of HRS § 831–5(a) and the Due Process Clause of the Fifth Amendment[.]

■ Although HRS § 831–5 assumes that an "order, certificate, or other instrument of discharge" is issued, neither HRS § 831–5, nor any other law, requires the issuance of such a document. Even if the issuance of such a document is statutorily required, the failure of the State to comply with the requirement is not a ground for vacating and dismissing the convictions of the person to whom the document was required to be issued.

CONCLUSION

Accordingly, we first vacate all of the sections entitled, "ANSWER" and "CONCLUSION AND ORDER" of section III of the April 9, 1998 Findings of Fact, Conclusions of Law and Order Denying Petition for Post Conviction Relief.

Second, we vacate all of section IV.B.1 of the April 9, 1998 Findings of Fact, Conclusions of Law and Order Denying Petition for Post Conviction Relief entitled, "Was Petitioner Subjected to Double Jeopardy as a Result of His Conviction in Counts I and III of # 56517?"

Third, we affirm the circuit court's denial of Tomomitsu's HRPP Rule 40 Petition, except that in Criminal No. 56517, the convictions of Theft in the First Degree (Count I) and Theft in the Second Degree (Count II) are reversed.

Fourth, we remand for the amendment of the April 9, 1998 Findings of Fact, Conclusions of Law and Order Denying Petition for Post Conviction Relief in a manner consistent with this opinion.

Concurring and Dissenting Opinion of ACOBA, Associate J.

I concur with the majority except with respect to its disposition of Criminal No. 56517, in which it reverses the convictions of Petitioner–Appellant Clement Jiro Tomomit-

su (Tomomitsu) for theft in the first degree (Count I) and theft in the second degree (Count II). I would affirm those convictions.

## I.

The majority states that obtaining the stolen property and disposing of such property in this case constituted one theft. I believe, however, that the one robbery charge and two theft charges in this case stemmed from separate, culpable acts. While various manners and styles of culpable conduct related to the common law crime of larceny have been gathered under the general definition of "theft" in the Hawai'i Penal Code, *see also Model Penal Code and Commentaries* § 223 commentary at 231–34 (Official Draft and Revised Comments 1980), the facts of each case determine whether a theft is separately punishable or is merged into a robbery offense. The fact that different acts are all labeled "theft" does not make such acts fungible for the purposes of double jeopardy or Hawai'i Revised Statutes (HRS) § 701–109 (1985) analysis.

## II.

On December 10, 1981, Tomomitsu was indicted on two charges of theft. In Count I, Tomomitsu was charged with "committing the offense of Theft in the First Degree in violation of Section 708–831(1)(b) [ (1985) ] of the [HRS]" on February 19, 1981 because he "did intentionally receive, retain, or *dispose* of property, knowing it had been stolen to wit, camera and camera accessories [ (camera equipment) ], the property of Per Alricson [ (Alricson) ], the value of which exceeds Two Hundred Dollars[.]" (Emphasis added). Under HRS § 708–831(1)(b), "[a] person commits the offense of theft in the first degree if he commits theft: ... [o]f property and services the value of which exceeds $200[.]" Under HRS § 708–830(7) (1985), an individual commits a form of theft, when he or she "intentionally receives, retains, or *disposes* of the property of another, knowing that it has been stolen with intent to deprive the owner of the property." (Emphasis added).

In Count II, Tomomitsu was charged with "committing the offense of Theft in the Sec-

ond Degree in violation of Section 708–832(1)(a) [ (1985) ] of the [HRS]" on February 25, 1981 because he "did intentionally receive, retain, or *dispose* of property, knowing it had been stolen to wit, a wristwatch, the property of [Alricson], the value of which exceeds Fifty Dollars[.]" (Emphasis added). Under HRS § 708–832(1)(a), "[a] person commits the offense of theft in the second degree if he commits theft ... [o]f property or services the value of which exceeds $50[.]" The relevant definition of theft in HRS § 708–830(7), relevant to Count I, is similarly applicable to this count.

On April 21, 1982, in an amended indictment, Tomomitsu was charged with robbery in a count designated as Count III. In Count III, Tomomitsu was alleged to have committed "the offense of Robbery in the First Degree in violation of Section 708–840(1)(b)(ii) [ (1985) ] of the [HRS]" on February 19, 1981 because "while in the course of committing theft, and while armed with a dangerous instrument, to wit, a handgun, [he] did threaten the imminent use of force against [Alricson], a person who was present, with the intent to compel acquiescence to the *taking of or escaping with the property* [.]" (Emphasis added). Under HRS § 708–840(1)(b)(ii), "[a] person commits the offense of robbery in the first degree if, in the course of committing theft ... [h]e is armed with a dangerous instrument and ... [h]e threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property[.]" The definition of theft obviously applicable under Count III is that set forth in HRS § 708–830(1), that is, that a person commits a form of theft if he or she "obtains, or exerts control over the property of another [by deception] with intent to deprive him of the property."

On May 27, 1986, Tomomitsu entered into a plea bargain according to which he would plead guilty as charged to the two theft counts and the first degree robbery charge would be reduced to second degree robbery. On June 2, 1986, the change of plea hearing was held. At the hearing, the presiding judge questioned Tomomitsu on his involvement in the alleged crimes. In a brief writ-

ten statement on his guilty plea form, Tomomitsu stated, "My friend and I took a camera from another person after I showed the person a gun in my waist." Tomomitsu agreed that this statement on the guilty plea form was a "correct statement[.]"

Tomomitsu also agreed with the prosecutor's representation that after the robbery Tomomitsu and his accomplice "went to Brewer's Liquors" and sold the camera equipment to an undercover detective on February 19, 1981 and "the watch several days later[;]" that the camera equipment was appraised at "over $200[,]" and that the wristwatch "was appraised [for at least] $50 but less than $200."

The court, thereafter, "[found] that [Tomomitsu's] pleas [to all three counts under Criminal No. 56517 were] made with knowledge, done voluntarily and intelligently[,] ... accept[ed his] guilty plea ... and adjudge[d him] guilty[.]"

### III.

### A.

On appeal, Tomomitsu first argues that he was improperly punished "twice" for the same offense in violation of the double jeopardy clauses of the United States Constitution and Hawai'i Constitution [1] because theft is a lesser included offense of robbery. Plaintiff–Appellee State of Hawai'i (the State), however, argues that the double jeopardy clauses are not involved because "the record clearly reflects that the factual bases for [Tomomitsu's] guilty pleas did not rely upon thefts during 'the course of the robbery,' but rather ... [upon] the disposal of property known to be stolen at an undercover 'fence.' "

The majority holds that because theft is a lesser included offense of robbery, "the law

does not permit the conviction of a defendant of two counts of theft for, first, having obtained or taken an item or property and, second, for having deposed of or sold the same item of property." Majority opinion at 26, 995 P.2d at 327. It reasons that "the taking and/or selling of one item of property is only one theft." Majority opinion at 26, 995 P.2d at 327. In essence, the majority believes that Tomomitsu's robbery conviction included as underlying thefts the sale of the camera equipment and wristwatch. Considering the surrounding facts, I conclude that the thefts were not lesser included offenses of the robbery conviction and, therefore, I disagree as to this aspect of the majority's opinion.

### B.

The Hawai'i Supreme Court recognizes that double jeopardy occurs in three situations: "(1) a second prosecution for the *same offense* after acquittal; (2) a second prosecution for the *same offense* after conviction; and (3) multiple punishments for the *same offense*." *State v. Tuipuapua*, 83 Hawai'i 141, 148, 925 P.2d 311, 318 (1996) (emphases added) (citing *State v. Toyomura*, 80 Hawai'i 8, 16, 904 P.2d 893, 901 (1995)). The first two situations concern successive prosecutions and the third situation concerns multiple punishments. *State v. Ake*, 88 Hawai'i 389, 392, 967 P.2d 221, 224 (1998). Tomomitsu's claim falls under the third category.

Our supreme court has determined that the United States Supreme Court has adopted the "same elements" test, originally described in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), "as the standard under the Double Jeopardy Clause of the United States Constitution" for all three double jeopardy situations.[2] *Ake*, 88 Hawai'i at 393, 967 P.2d at

---

**1.** The Fifth Amendment to the United States Constitution provides in relevant part: "No person ... shall be subject for the same offence to be twice put in jeopardy of life or limb[.]" Article I, section 10 of the Hawai'i Constitution provides in relevant part: "No person ... shall be subject for the same offense to be twice put in jeopardy[.]"

**2.** In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United State's Supreme Court established the *Blockburger* "same elements" test, which provides that *where the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

225 (citing *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (citations omitted)).

In the successive prosecutions context, the Hawaiʻi Supreme Court has adopted the "same conduct" test[3] as the general standard to be applied under the Double Jeopardy Clause of the Hawaiʻi Constitution. *State v. Lessary,* 75 Haw. 446, 460, 865 P.2d 150, 157 (1994). The supreme court has not expressly indicated which test applies under the Hawaiʻi Constitution in the multiple punishments situation. This court, however, in *State v. Caprio,* 85 Hawaiʻi 92, 937 P.2d 933 (App.1997), stated that the appropriate test for a multiple punishment test was the *Blockburger* "same elements" test.[4]

However, I believe that the double jeopardy clause under either the United States or Hawaiʻi Constitutions is not implicated in this case because the robbery and charged thefts do not arise from the same conduct, act, or transaction. *See supra* notes 2 and 4.

## IV.

### A.

In *State v. Pia,* 55 Haw. 14, 514 P.2d 580 (1973), the Hawaiʻi Supreme Court recognized that when "two [or more] different criminal acts are at issue, supported by different factual evidence even though separated in time by only a few seconds, one offense

by definition cannot be 'included' in the other." *Id.* at 19, 514 P.2d at 584.

In *Pia,* the defendant was charged (1) in Count I with violating HRS § 724–5 (Supp. 1972) by committing "an assault or battery on a police officer in the performance of his duties with the intent to obstruct that officer in the discharge of those duties" and (2) in Count II with violating HRS § 740–11 (1968) by willfully interfering with "a police officer while such officer is lawfully executing his duties[.]" *Id.* at 15, 514 P.2d at 582. The defendants pled guilty to the second count and, thereafter, moved to dismiss the first count "on the ground that their guilty pleas and convictions of the second count constituted a bar to their prosecution for the first count under the principle of double jeopardy." *Id.* at 16, 514 P.2d at 583. The trial court, thereupon, dismissed Count I and the State appealed. *Id.*

On appeal, the prosecution argued that Count II related to the defendants' interference with the officer's attempt to subdue and arrest Pia, whereas Count I related to the defendants' assault or battery on the officer a few minutes after the arrest as the officer attempted to call for assistance. *Id.* at 17, 514 P.2d at 583. The Hawaiʻi Supreme Court held that acceptance of the guilty plea to Count II did not bar the prosecution of Count I and remanded the case to the trial court. *Id.* at 21, 514 P.2d at 585. It reasoned that the defendants could have been properly punished for both counts if the

*Id.* at 304, 52 S.Ct. 180 (emphasis added).

3. Under the "same conduct" test, " 'prosecution of [a] charge is barred if the State, to establish the conduct element of [that offense], will prove acts of the defendant on which the State relied to prove the conduct element of [another] offense for which [the defendant] had already been prosecuted.' " *State v. Ake,* 88 Hawaiʻi 389, 393, 967 P.2d 221, 225 (1998) (quoting *State v. Lessary,* 75 Haw. 446, 460, 865 P.2d 150, 157 (1994)).

4. The "same elements" test provides that to determine whether *"same act or transaction"* are two distinct offenses or only one, the test is "whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180 (emphasis added).

In *State v. Caprio,* 85 Hawaiʻi 92, 937 P.2d 933 (App.1997), this court noted that in *Lessary,* the Hawaiʻi Supreme court did not indicate that the

"same conduct" test was applicable to multiple punishment cases, but rather concluded that the "same conduct" test was applicable to successive prosecution situations. *Caprio,* 85 Hawaiʻi at 102, 937 P.2d at 943 (citing *Lessary,* 75 Haw. at 459, 865 P.2d at 156). This court then stated that the appropriate test for a multiple punishment situation was the *Blockburger* "same elements" test and "add[ed] thereto a requirement that the law defining each of the offenses is intended to prevent a substantially different harm or evil." *Id.* at 103, 937 P.2d at 943–44 (internal quotation marks and citation omitted).

I disagree that the appropriate test includes the additional requirement. The reference to "substantially different harm or evil" is taken from HRS § 701–111(a)(c)(i) which I consider pertinent only to a statutory claim under HRS § 701–111 and not to a constitutional claim based on the double jeopardy clause.

prosecution could demonstrate that the two offenses charged constituted separate acts. *Id.* at 19, 514 P.2d at 584–85.

## B.

Like *Pia,* in this case, separate acts were charged by the State and admitted to by Tomomitsu. Count III regarding robbery referred to theft as the *taking and carrying away* of the camera and wristwatch from Alricson. The relevant facts were Tomomitsu's threat of force by exposure of a weapon and the taking of property from Alricson's person or presence. In contrast, Counts I and II referred to the thefts as the disposal of the stolen items at different times. The relevant facts were the actual disposal of stolen property on specific dates to an undercover detective.

During the change of plea hearing, the court elicited Tomomitsu's admission to his display of the gun to Alricson and the taking of the property, the bases for the robbery charge. The colloquy between Tomomitsu, the court, and attorneys confirmed the sale of the camera equipment and watch at different times and apparently at a place other than that of the robbery. Hence, the criminal acts of the robbery and each theft were supported by different factual evidence and separated by time and space.

## C.

*Martin v. Commonwealth,* 221 Va. 720, 273 S.E.2d 778 (1981) is similar. There the defendant argued that his convictions for both robbery and petit larceny constituted a violation of the double jeopardy clause. *Id.* at 779. The Virginia Supreme Court held that the double jeopardy clause of both the United States and Virginia Constitutions did not apply to prevent the prosecution or conviction of multiple offenses when "the offenses are based upon distinct and separate acts." *Id.* at 780.

In *Martin,* the defendant drove his automobile into a station and directed the attendant to fill the gas tank. *Id.* at 779. After the attendant completed filling the gas tank, the defendant displayed a shotgun and ordered the attendant to "give me all your money." *Id.* The attendant, thereafter, gave the defendant the money in his pockets. The defendant also obtained money from inside a refrigerator in the station building. *Id.* at 779–80. The defendant was charged with robbery of the attendant and grand larceny of the station owner for the money taken from the refrigerator. *Id.* at 780.

The Virginia Supreme Court held that the defendant's conviction for both robbery and theft did not violate the double jeopardy clauses because the offenses did not occur at the same time and "involved two separate and distinct acts of caption[5] and two different acts of asportation." *Id.* at 781. It reasoned that "the robbery outside the station was complete and the theft underlying that offense ended the moment the defendant picked up the money [that the attendant] had dropped." *Id.* at 782. The larceny inside the station and the theft underlying that offense began and ended with the removal from the refrigerator of the money concealed therein." *Id.* Therefore, convicting the defendant of the two offenses did not violate the double jeopardy clauses because the convictions were "based upon distinct and separate acts and did not involve the same theft." *Id.*

In *State v. Ford,* 738 A.2d 937 (N.H.1999), the defendant was convicted of one count of robbery and two counts of theft. *Id.* at 939. The Supreme Court of New Hampshire noted that double jeopardy is implicated "only if [a defendant] is charged with both offenses deriving from the same criminal act[.]" *Id.* at 944. The appellate court held that there were two distinct criminal acts involving different property which were separated in time and space. *Id.* at 944–45. It reasoned that the defendant "committed theft when he removed or ordered remov[al of the] diamond and sapphire from the store display case[.] *Id.* at 945. "He then committed robbery when he threatened the clerk with a gun and demanded her bracelet and pendant." *Id.*

---

5. "Caption" is defined as "the act of taking or seizing." *Webster's 3rd New International Dictionary* 334 (1981).

## D.

Tomomitsu's convictions here did not constitute multiple punishment for the same crime. Tomomitsu's thefts in selling the stolen items to undercover police at different times and at another place was not the same form of theft underlying the robbery of Alricson. The theft element of the robbery occurred when Tomomitsu took or acquired the items by using or threatening to use force. In contrast, the theft charges in Counts I and II involved Defendant's acts of disposing of the items through sales to undercover police at later times, and at another place. Each charged offense, therefore, rested on distinct and separate acts and one offense was not premised upon the occurrence or existence of the other offense. If "the State were attempting to rely on the same *physical act* as constituting two statutory offenses the question" of an included offense would arise. *Pia*, 55 Haw. at 17–18, 514 P.2d at 584 (emphasis in original). That is not the case here since the operative facts at the change of plea hearing on Counts I and II were *separate* sales of stolen property, as evidenced by the crimes having been alleged in the indictment as occurring on two different days.

Thus Tomomitsu's convictions did not violate either the federal or state prohibitions against double jeopardy. As there was no double jeopardy violation, Tomomitsu was not punished thrice for the same conduct by being convicted of the robbery and thefts.

## V.

Tomomitsu also urges that the robbery and theft offenses should have been merged because they constituted a continuing crime. In *State v. Martin*, 62 Haw. 364, 616 P.2d 193 (1980), the Hawai'i Supreme Court ruled that in determining whether there is a continuing crime, the applicable test is

"whether the evidence discloses one general intent or discloses separate and distinct intents." ... [I]f "there is but one intention, one general impulse, and one plan,

even though there is a series of transactions, there is but one offense."

*Id.* at 368, 616 P.2d at 196 (quoting *People v. Howes*, 99 Cal.App.2d 808, 818–19, 222 P.2d 969, 976 (1950)).

In *State v. Vinge*, 81 Hawai'i 309, 916 P.2d 1210 (1996), the Hawai'i Supreme Court held that the charges of attempted theft in the first and second degrees were included offenses of robbery in the first degree. *Id.* at 320, 916 P.2d at 1221. However, it pointed out, citing from *Pia*, as we have previously, that "where two different criminal acts are at issue, supported by different factual evidence, even though separated in time by only a few seconds, one offense cannot be included in the other." *Id.* (citations omitted); *see also Pia*, 55 Haw. at 19, 514 P.2d at 584–85.

In *Vinge*, the defendant threatened an officer with a machete while attempting to steal guns and ammunition from a sports store. *Id.* at 319–20, 916 P.2d at 1220–21. The supreme court ruled that the attempted theft charges were included in the robbery charge. *Id.* at 320, 916 P.2d at 1221. It did so because it concluded that the defendant "acted with only one general intent ... [and his] threat to use the machete arose ... [during] his attempt to steal, [and, therefore,] was continuous and not separated in time as to constitute a separate criminal act." *Id.; see also State v. Correa*, 5 Haw.App. 644, 649, 706 P.2d 1321, 1325 (1985) (stating that "a kidnapping that is necessarily and incidentally committed during a robbery cannot be the basis of a charge of kidnapping in addition to a charge of robbery").

In the present case, the robbery and thefts were not part of a continuing crime, but rather separate and distinct acts not related in time or place. The robbery of the camera equipment and wristwatch from Alricson's person or presence occurred on February 19, 1981. Tomomitsu then sold the camera equipment on February 19, 1981, obviously at a later time than the robbery, and the wristwatch on February 25, 1981, both to a police storefront fence operation at Brewer's Liquors, a location apparently different from that where the robbery took place.[6]

---

6. The record is devoid of specific information concerning the actual location of the robbery but

obviously the robbery and sales did not take place at the same time in the same place.

Unlike in *Vinge*, there are no facts to indicate Tomomitsu acted with one general intent. In *Vinge*, the robbery and attempted theft occurred contemporaneously; Tomomitsu sold the items after completing the robbery and, hence, exhibited "separate and distinct intents[.]" *Id.* at 319, 916 P.2d at 1220. The time lapses from the robbery on February 19 to the sale of the camera equipment and later of the watch on February 25 at Brewer's Liquors demonstrate that the robbery and thefts did not constitute one continuous, uninterrupted criminal act.

Neither the indictments, plea form, nor the colloquy before the court at the change of plea hearing suggest that the sales were the same acts which constituted the theft element of the robbery charge. The prosecutor noted that *"[a]fter* [Tomomitsu and his friend] had relieved [Alricson] of his camera equipment and wrist watch ... Tomomitsu and his friend ... *sold those items* to an undercover detective."  (Emphases added). As pointed out previously, Tomomitsu agreed to this description of the crimes. Considering the time, place, and circumstances of the events, the offenses were not part of a single and continuous crime, but separate and distinct acts.

### VI.

Tomomitsu's final pertinent contention on appeal is that he was punished twice for the same offense in violation of HRS § 701–109. He maintains that the "theft charges meet the requirements for a lesser included offense according to H.R.S. Section 701–109(4)(a)[.]"

HRS § 701–109 provides in relevant part:

**Method of prosecution when conduct establishes an element of more than one offense.** (1) *When the same conduct* of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (4) of this section;

. . . .

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is *established by proof of the same or less than all the facts* required to establish the commission of the offense charged; ... [7]

(Emphases added).

As discussed above, the offenses charged and admitted to did not relate to the "same conduct." Of course, the underlying theft in a robbery would be "included" in the robbery offense. However, such is not the case where, as here, the robbery and charged thefts were separate criminal acts. *Vinge*, 81 Hawai'i at 319, 916 P.2d at 1220.

### VII.

For the foregoing reasons, I would affirm Tomomitsu's convictions for theft in the first degree and in the second degree.

---

7.  Obviously, different facts are required to prove the elements of robbery and of dual degrees of the thefts.